**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

YE XU,

                Petitioner,

    v.

CRAIG A. LOWE, et al.,

                Respondents.

CIVIL ACTION NO. 3:26-CV-01017

(MEHALCHICK, J.)

**MEMORANDUM**

Petitioner, Ye Xu ("Xu") brings this petition for writ of habeas corpus. (Doc. 1). On April 20, 2026, Xu filed the instant petition, requesting that Respondents Craig A. Lowe, Todd Lyons, Markwayne Mullin, and Todd Blanche[1] release him from custody at the Pike County Correctional Facility in Lords Valley Pennsylvania. (Doc. 1, at 12). On April 28, 2026, Lowe filed a response to Xu's petition, and on April 30, 2026, Xu filed a traverse. (Doc. 5; Doc. 8). For the following reasons, Xu's petition (Doc. 1) is **GRANTED**.

---

[1] Pursuant to the "immediate custodian rule," the only proper respondent in this case is Craig A. Lowe ("Lowe"), Warden of Pike County Correctional Facility. "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Xu is detained at the Pike County Correctional Facility, Lowe is the proper respondent. (Doc. 1, at 2); *see Rumsfeld*, 542 U.S. at 434. As such, Respondents Todd Lyons, Markwayne Mullin, and Todd Blanche are **DISMISSED**. However, the government will be bound by the Court's judgment because Lowe is acting as an agent of the federal government by detaining Xu on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, 3:25-cv-01896, 2025 WL 3522932, at *8 (M.D. Pa. Nov. 13, 2025), *adopted in part, rejected in part*, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (finding same).

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

The following background is derived from Xu's petition, Lowe's response, and the exhibits thereto. (Doc. 1; Doc. 5). Xu is a citizen of the Peoples Republic of China. (Doc. 5, at 2). On or about September 1, 2024, Xu entered the United States without inspection at the United States-Mexico border. (Doc. 1, at 3; Doc. 5, at 2). Immigration officers arrested Xu at the border and detained him for three days before releasing him on an order of recognizance. (Doc. 1, at 4). On or about September 2, 2024, the Department of Homeland Security ("DHS") issued Xu a notice to appear, placing Xu in removal proceedings. (Doc. 1, at 4; Doc. 5, at 2; Doc. 5-5, at 2).

ICE took Xu into custody on or about April 1, 2025. (Doc. 1, at 4; Doc. 5, at 3). Xu submits that ICE took him into custody after local authorities arrested him during a traffic stop. (Doc. 1, at 4). The government provides that ICE took Xu into custody after Xu was arrested for attempted grand larceny by the Putnam County Sheriff. (Doc. 5, at 3). Xu's criminal charges are pending. (Doc. 5, at 3). On August 25, 2025, an immigration judge ordered Xu removed from the United States. (Doc. 1, at 4). Xu did not appeal the order of removal, which became final on September 25, 2025. (Doc. 1, at 4; Doc. 5, at 3).

On September 30, 2025, ICE sent a request to the Embassy of the Peoples Republic of China for the travel documents necessary to execute Xu's removal. (Doc. 5, at 3). On or about November 25, 2025, DHS conducted a custody review and determined that Xu would remain in immigration detention. (Doc. 1, at 4; Doc. 5, at 3). The government submits, that to date, the Peoples Republic of China has not refused to issue Xu's travel document or denied that Xu is a citizen of China. (Doc. 5, at 3). Xu has been in immigration detention with a final order of removal for over seven months. (Doc. 1, at 4; Doc. 5, at 3). In total, Xu has been in

immigration detention for over a year. (Doc. 1, at 4; Doc. 5, at 3).

II.    **LEGAL STANDARD**

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing or release if the Court determines that a noncitizen habeas petitioner is entitled to such relief under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 400 (D.N.J. 2025) (finding petitioner's continued detention without reasonably imminent removal is unreasonable and ordering release).

III.    **JURISDICTION**

3

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the Immigration and Nationality Act ("INA") strips district courts of subject-matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR"). However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later on a PFR. *Kahlil*, 164 F.4th at 273-74.

Habeas actions based on whether a petitioner is subject to unconstitutionally lengthy detention remain in the jurisdiction of district courts. *Kahlil, 164 F.4th at 277-79* (holding detention-specific claims, like length and conditions-of-confinement claims, do not arise from removal proceedings and can be addressed by district courts); *see Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."). The question of whether a petitioner's detention has been unconstitutionally

long is wholly collateral to removal proceedings and cannot be meaningfully reviewed on a PFR. *Kahlil,* 164 F.4th at 278-79 (finding that length of confinement claim "does not get channeled into the PFR review process"). Thus, the Court retains jurisdiction over the legal question of whether Xu's detention after his order of removal became final has become unconstitutionally prolonged and unrelated to the purpose of removal. *Jennings,* 583 U.S. at 294; *Kahlil,* 164 F.4th at 274-79; *Zadvydas*, 533 U.S. at 688.

**IV.    DISCUSSION**

Xu contends that his detention violates his Fifth Amendment right to substantive and procedural due process and section 1231 of the INA because there is not a significant likelihood of his removal in the reasonably foreseeable future. (Doc. 1, at 9-12). To support his contention that removal is not reasonably foreseeable, Xu provides that ICE does not appear to have made any progress towards removing him, despite his full cooperation in applying for a travel document. (Doc. 1, at 12). Xu also avers that removal is not reasonably foreseeable because China has not issued Xu a passport or travel document. (Doc. 1, at 4).

The government counters that Xu fails to carry his burden of showing that removal is not reasonably foreseeable because his claims are speculative. (Doc. 5, at 6). Nevertheless, the government rebuts that removal is reasonably foreseeable because Xu applied for a travel document and his removal is progressing. (Doc. 5, at 7). The government provides that China has not refused to issue Xu a travel document or denied that Xu is a Chinese citizen. (Doc. 5, at 7). The government also notes that in fiscal year 2025, approximately 3,400 repatriations to China occurred. (Doc. 5, at 3). The government avers that it will remove Xu to China in the reasonably foreseeable future. (Doc. 5, at 8).

In his traverse, Xu counters that by the government's own admission, the only concrete step ICE has taken to execute Xu's removal is forwarding a travel document request to the Chinese Embassy on September 30, 2025. (Doc. 8, at 1-2). Xu notes that the government provides no information on whether the Chinese Embassy responded in any form, whether ICE followed up with the Chinese Embassy after forwarding Xu's travel document request, whether there is a timeline for China's issuance of the travel document, and whether there is a scheduled removal date. (Doc. 8, at 3). Xu contends that China's nonresponse to a seven-month-old travel document request is not the equivalent of cooperation or imminent removal. (Doc. 8, at 4). Xu also contends that the government's aggregate repatriation statistics cannot substitute for an individualized showing that Xu's removal is imminent. (Doc. 8, at 9).

Section 1231 of the INA provides for the detention of noncitizens with final orders of removal. 8 U.S.C. § 1231. Pursuant to 8 U.S.C. § 1231, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Noncitizens convicted of certain criminal offenses and noncitizens whom the Attorney General finds to be a risk to the community or unlikely to comply with an order of removal may be detained beyond the 90-day removal period. 8 U.S.C. § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678, 690-91 (2001), the Supreme Court found that indefinite detention of a noncitizen with a final order of removal violates the Due Process Clause of the Fifth Amendment, and that detention of a noncitizen with a final order of removal must be limited with a definite endpoint. The Supreme Court determined that to discern whether such post-order of removal detention comports with the Due Process Clause of the Fifth Amendment, habeas courts must ask whether the detention "exceeds a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699. The Supreme Court

found that detention post-order of removal is presumed reasonable for a period under six months. *Zadvydas*, 533 U.S. at 701. After the presumptively reasonable six-month period runs and the detained noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. As the period of confinement grows, what counts as reasonably foreseeable future conversely shrinks. *Zadvydas*, 533 U.S. at 701. If removal is ultimately not reasonably foreseeable, habeas courts should hold continued detention unreasonable and order release. *Zadvydas*, 533 U.S. at 699-700. Courts in the Third Circuit have found that China is uncooperative in repatriating its citizens removed from the United States.[2] *Pan v. Oddo*, No. 3:25-cv-00265, 2025 WL 3960013, at *4 (W.D. Pa. Dec. 1, 2025); *Lo v. Noem*, No. 3:25-cv-493, 2026 WL 1045389, at *1 (W.D. Pa. April 17, 2026); *Xu v. Bondi*, No. 25-16274, 2026 WL 34682, at * 3 (D.N.J. Jan. 6, 2026); *see Lee v. Oddo*, 25-452J, 2026 WL 523154, at *3 (W.D. Pa. Feb. 25, 2026).

Xu has been detained under 8 U.S.C. § 1231 for over seven months, while the government has attempted to obtain travel documents for his removal. (Doc. 1, at 4; Doc. 5, at 3). Xu's presumptively reasonable six-month period of § 1231 detention has run. *Zadvydas* 533 U.S. at 701. By providing evidence that ICE has not made progress towards removing

---

[2] In *Joseph v. United States*, 127 F. App'x 79, 81 (3d Cir. 2005), the Third Circuit found that Joseph, a noncitizen from Antigua-Barbuda with a final order of removal, failed to show that his removal was unlikely in the reasonably foreseeable future because DHS requested travel documents and the issuing country expressed a willingness to issue the travel documents and advised that travel documents would be forthcoming. *Joseph*, 127 F. App'x at 81. While the Court acknowledges the holding in *Joseph*, the case is distinguishable from Xu's because of the individualized process for and history of repatriation of Chinese citizens removed from the United States. *See e.g., Pan*, 2025 WL 3960013, at *4. Further, the Chinese government has not expressed a willingness to issue travel documents to Xu. While the government anticipates Xu's travel documents, China has not advised that Xu's travel documents will be forthcoming. (*See* Doc. 5-2; Doc. 8, at 3).

Xu and that there is no indication if or when China will issue a travel document, Xu has shown good reason to believe removal is unlikely in the reasonably foreseeable future. (Doc. 1, at 4). *See Lo*, 2026 WL 1045389, at *1*; see Xu*, 2026 WL 34682, at *3*; see Lee*, 2026 WL 523154, at *3*; see also Pan*, 2025 WL 3960013, at *3-*4.

The government fails to rebut Xu's showing by providing that China has not rejected Xu's travel document application. (Doc. 5, at 3, 7-8). While Xu completed a travel document application on September 30, 2025, the government provides no indication that the Chinese Embassy has responded in any form, that the government has followed up with the Embassy, or whether there is a timeline for when the Embassy will approve the application and the United States will put Xu on a removal flight. (*See* Doc. 5-2; Doc. 8, at 3). The government's anticipation that it will imminently receive a travel document and remove Xu is speculative. *See Lee*, 2026 WL 523154, at *3 (quoting *Kane v. Mukasey*, No. 08-cv-037, 2008 WL 11393137, at *5 (S.D. Tex. Aug. 21, 2008)) ("A remote possibility of eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future."); *see also Pan*, 2025 WL 3960013, at *4 (finding a remote possibility of removal is not sufficient to rebut petitioner's good showing that removal is not likely in the reasonably foreseeable future).

The government also fails to rebut Xu's showing by providing aggregate Chinese repatriation statistics for fiscal year 2025. (Doc. 5, at 7-8). While the aggregate statistics demonstrate that removal to China may be possible, the government fails to disclose how many Chinese nationals with final orders of removal are currently residing in the United States and cannot be removed or how Xu's circumstances compare to the 3,400 repatriated Chinese citizens. (*See* Doc. 5-2; Doc. 8, at 9); *Van Nguyen v. Sage*, No. 26-cv-1151, 2026 WL

1348513, at *7 (M.D. Pa. May 14, 2026) (collecting cases) (finding general repatriation statistics without further context are insufficient to rebut a showing that petitioner's removal is not likely in the reasonably foreseeable future). The government's assertion that China will issue a travel document for Xu in the reasonably foreseeable future is speculative and fails rebut Xu's showing. (Doc. 5, at 8). *See Pan*, 2025 WL 3960013, at *4; *see Lo*, 2026 WL 1045389, at *1; *see Xu*, 2026 WL 34682, at *3; *see also Lee*, 2026 WL 523154, at *3*; see also Van Nguyen*, 2026 WL 1348513, at *7. Xu's removal has been progressing for over seven months, with no end in sight. (Doc. 1, at 14-16). Accordingly, Xu's petition for writ of habeas corpus is **GRANTED**.[3] (Doc. 1).

## V.    CONCLUSION

For the foregoing reasons, Xu's petition for writ of habeas corpus is **GRANTED**. (Doc. 1). Lowe is **ORDERED** to release Xu from custody under appropriate conditions of supervisory release. The Clerk of Court is directed to close this matter.

An appropriate Order follows.

BY THE COURT:

Dated: May 22, 2026

/s/ Karoline Mehalchick

**KAROLINE MEHALCHICK**
**United States District Judge**

---

[3] The Court notes that Xu also seeks relief in the form of attorney's fees and costs. (Doc. 1, at 23). The Court cannot award attorney's fees without first assessing affidavits and other evidence regarding the reasonableness of the fees sought. *See Toshiba Am. Med. Sys., Inc. v. Valley Open MRI & Diagnostic Ctr. Inc.*, 674 F. App'x 130, 133 (3d Cir. 2016). (nonprecedential) (noting that the party seeking attorney's fees bears "the burden of producing evidence as to the reasonableness of the fees" and reversing a district court's grant of a request for fees based "solely [on] a declaration stating the amount claimed"); *see also Ohm Sys., Inc. v. Senergene Sols., LLC*, No. CV 23-1340, 2025 WL 2772612, at *2 (D.N.J. Sept. 29, 2025). (noting that a court cannot assess a request for attorney's fees without sufficient evidence regarding the reasonableness of the fees sought). Accordingly, Xu must request attorney's fees in a separate motion with accompanying exhibits.